**YELLOW FREIGHT SYSTEM, INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**and**

**National Broadcasting Company, Inc., Intervenor.**

No. 79–2237.

United States Court of Appeals, Tenth Circuit.

Argued May 11, 1981.

Decided Aug. 10, 1981.

---

Floyd Abrams, New York City (Laurence A. Silverman and Susan Fine of Cahill Gordon & Reindel, New York City, of counsel; Howard Monderer, Vice President, Law, Washington, D. C., and Carol Hecht Katz,

New York City, of National Broadcasting Co., Inc., with him on the brief), for intervenor.

Lester M. Bridgeman, Washington, D. C. (Louis T. Urbanczyk, Washington, D. C., with him on the brief), for petitioner.

Lisa B. Margolis, Brooklyn, N. Y. (Sanford M. Litvack, Asst. Atty. Gen., Robert B. Nicholson and Margaret G. Halpern, Attys., Dept. of Justice; Robert R. Bruce, General Counsel, Daniel M. Armstrong, Associate General Counsel, and Keith H. Fagan, Counsel, Federal Communications Commission, Washington, D. C., with her on the brief), for respondents.

Before McWILLIAMS and LOGAN, Circuit Judges, and BOHANON,* District Judge.

McWILLIAMS, Circuit Judge.

The petitioner, Yellow Freight System, Inc., a national trucking company which operates, *inter alia*, in Kansas, seeks review of an order of the Federal Communications Commission.[1]

Yellow Freight filed a complaint with the Commission against the National Broadcasting Company, complaining about three television reports relating to lack of highway safety in the trucking industry. The NBC reporter-editor who prepared the reports, Brian Ross, visited Yellow Freight's terminal in Lancaster, Pennsylvania, and interviewed some of its officials.

The gist of Yellow Freight's complaint was that NBC's reports violated the Commission's fairness doctrine[2] and personal attack rule and, additionally, that the net-

* Honorable Luther L. Bohanon, United States District Judge, for the Western District of Oklahoma, sitting by designation.

1. Yellow Freight states that it is the third largest motor common carrier in the country. It maintains offices in Shawnee Mission, Kansas, and on this basis filed the present proceeding in this Court. Portions of the disputed broadcasts were filmed at the Yellow Freight terminal in Lancaster, Pennsylvania.

2. The fairness doctrine, originated in 1949 by the FCC, requires that broadcasters present public issues, and that they give fair coverage to all sides of those issues. *See* the extensive discussion of the history of the doctrine in *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). *See also National Citizens Comm. for Broadcasting v. FCC*, 567 F.2d 1095 (D.C.Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978).

work in its three reports [3] on safety in the trucking industry was guilty of deliberate distortion, i. e., NBC knew in advance that its reports contained inaccuracies and included erroneous information in order to purposely mislead.

The Commission ordered NBC to file a response to Yellow Freight's complaint, which it did. The parties thereafter filed with the Commission about 250 pages of written material in support of their respective positions.[4] By unanimous decision, the Commission denied Yellow Freight's complaint, holding that the fairness doctrine had not been violated, and that Yellow Freight had failed to bring forth extrinsic evidence of deliberate distortion which would require an evidentiary hearing into the matter. In re Yellow Freight System, Inc., 73 F.C.C.2d 741 (1979). Yellow Freight now seeks judicial review of that part of the Commission's decision which dismissed, without an evidentiary hearing, Yellow Freight's claim of deliberate news distortion.[5] NBC appears here as an intervenor.

■ All parties agree that the Commission need not hold an evidentiary hearing on a mere charge of deliberate news distortion, and that an evidentiary hearing is only required when the complainant submits extrinsic evidence of deliberate distortion. See In re Network Coverage of the Democratic National Convention, 16 F.C.C.2d 650, 656–58 (1969). Yellow Freight does not challenge this standard. Rather, Yellow

Freight claims that it met the extrinsic evidence test, and that the Commission should have gone forward and held a full-scale evidentiary hearing into the matter. We do not agree.

■ In support of its position that it did produce extrinsic evidence of deliberate distortion that required an evidentiary hearing, Yellow Freight first claims that NBC admitted, in effect, that it was, in fact, guilty of deliberate distortion. This is not our understanding of the record. Indeed, the suggestion that NBC "confessed all" is a bit hyperbolic. Such is merely Yellow Freight's interpretation of the record, an interpretation which was rejected by the Commission. We simply are unable to perceive how the record supports Yellow Freight's claim that NBC admitted deliberate news distortion.

■ Yellow Freight also claims that the affidavit of its Senior Vice President, Stephen P. Murphy, constitutes extrinsic evidence of deliberate distortion. We disagree. Murphy met with Brian Ross, the NBC reporter who prepared the reports here under consideration. Murphy, in an affidavit, stated that Ross admitted writing articles for the *Prod Dispatch*, a publication of a dissident truck drivers' group which opposes both trucking management and union leadership. The subject matter of these particular articles, according to Murphy, was the administration of union pension funds about which Ross was quite critical.

---

3. Two of the reports were broadcast on the NBC Nightly News. The third was on the "Today" show.

4. There was another party in the proceeding before the FCC. The American Trucking Associations, Inc. (the ATA) also charged that NBC had violated the fairness doctrine. The ATA stated that it was "the national trade association of the trucking industry" and that it had as a primary concern "driver and highway safety." The ATA did not file an appeal in this Court. Both Yellow Freight and the ATA charged that NBC had acted unfairly in not distinguishing between various groups, or types of operators, within the trucking industry, primarily the regulated versus the unregulated factions. The Interstate Commerce Commission regulates some, but not all, truckers.

5. Although the two are closely related, the fairness doctrine and the rule prohibiting deliberate news distortion are separate. Both are based on the FCC's statutory mandate to promote the public interest. 47 U.S.C. §§ 307(a), 309(a) (1976). The difference between the two theories is set forth in In re CBS Program "Hunger in America," 20 F.C.C.2d 143, 147 (1969): "The issue presented here by the complaints is not one under the fairness doctrine, concerned with presentation of contrasting viewpoints (a different matter upon which we do not pass), but rather, whether to find the licensee has sought deliberately to slant the news."

Ross also filed an affidavit in which he categorically denied that he ever contributed to *Prod Dispatch*. Regardless of this conflict in affidavits, the Commission considered, and rejected, the suggestion that Murphy's affidavit constituted extrinsic evidence of deliberate distortion such as would require an evidentiary hearing. We agree with the Commission that, even if Ross did write articles for *Prod Dispatch* which were critical of the administration of pension funds, such would not be any evidence that, in broadcasting reports critical of the trucking industry's safety practices, Ross was guilty of deliberate distortion. This particular argument is to us a *non sequitur*.[6]

One additional argument made by the petitioner merits brief consideration. Yellow Freight contends that the Commission ignored all of the extrinsic evidence offered to buttress the distortion allegation.[7] It is obvious that the Commission did not ignore all of the evidence, since it specifically discussed the affidavits, for example. Further, while other extrinsic evidence was discussed in the portion of the FCC opinion dealing with the fairness claim, rather than the section dealing with the news distortion allegation, it appears from the opinion as a whole that the proffered extrinsic evidence *was* considered by the Commission. In addition, this Court has taken it into account. We note that, while it is possible that there were errors in the three broadcasts, the inclusion of incorrect information cannot, in itself, lead to the conclusion that the network deliberately presented false reports.

The decision of the Commission is affirmed.

**6.** The Commission found that, assuming the allegations in Murphy's affidavit to be true, there would not be enough "extrinsic evidence" upon which the FCC could require a hearing. This finding effectively disposes of the petitioner's contention that the ruling cannot stand because it is based upon the application of the rules of evidence to an agency proceeding, *i. e.*, the FCC ruling was erroneous because it was based upon a finding that the Murphy affidavit was hearsay.

**7.** Specifically, the petitioner alleges that the FCC did not view the tapes of the broadcasts, and that it ignored evidence regarding false statements in the broadcast about Department of Transportation regulations and state trucking regulations. Further, Yellow Freight states that the Commission should have considered its allegation that the "broadcast as a whole" was slanted.